[Cite as *State v. Williams*, 2017-Ohio-803.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2016 CA 00074 |
| ANTHONY L. WILLIAMS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  2015 CR 02055


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 6, 2017


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOHN D. FERRERO                        GEORGE URBAN
PROSECUTING ATTORNEY                   116 Cleveland Avenue NW
RENEE M. WATSON                        Suite 808
ASSISTANT PROSECUTOR                   Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, John, J.*

**{¶1}** Appellant Anthony Lamar Williams appeals his convictions on one count of Domestic Violence and one count of Assault entered in the Stark County Common Pleas Court following a jury trial.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

**{¶3}** Appellant Anthony Williams was charged with and convicted of one count of Domestic Violence, in violation of R.C. §2919.25, a third degree felony, one count of Assault, in violation of R.C. §2903.13, a first-degree misdemeanor, and one count of Resisting Arrest, in violation of R.C. §2921.33 a second-degree misdemeanor. The charges arose from an incident which occurred on December 23, 2015. The relevant facts as set forth at trial are as follows:

**{¶4}** On December 23, 2015, at approximately 8:00 p.m., "Victim 2" was living at 1000 16th Street NW in Canton, Ohio, when she answered a knock at her door and found a panicked woman (Victim 1) standing outside whom she did not know. She noticed not only that the woman was in a panic, but also that she had a scratch on her neck near her collar bone. The woman asked her to go with her to her apartment because she needed to get something inside. (T. at 147-149).

**{¶5}** Victim 2 followed Victim 1 a couple doors up the street to an upstairs apartment at 1010 16th Street NW. Victim 1 walked into the apartment and, because she seemed worried, Victim 2 followed. There was a black male inside the apartment, later identified as Defendant-Appellant Anthony Williams. He and Victim 1 started arguing, and

the verbal argument quickly became physical when Appellant began pummeling Victim 1. (T. at 151-152).

{¶6} Victim 2 witnessed Appellant punch Victim 1 in the face, then swing a glass bottle at her. Victim 2 called 911 but could not be heard over screaming from Appellant and Victim 1. (T. at 152-153).

{¶7} Victim 2 then tried to break up the fight, but Appellant picked her up and slammed her down on top of Victim 1. Victim 2 was eventually able to get Victim 1 away from Appellant, and the two ran out of the apartment just as police arrived. (T. at 153-154).

{¶8} Canton Police Officers Coates and Eckelberry were first on the scene and heard screaming from inside the apartment. The officers activated their body cameras and proceeded to the apartment. Officer Coates announced himself and opened the apartment door. As he did, two women ran from the residence. (T. at 182-187).

{¶9} Officer Coates recalled that when he approached Victim 1, she was hysterical, screaming, and her face was bleeding. She advised Officer Coates that Appellant might have a gun. The officers called for backup and then called for Appellant to come out of the apartment. Appellant initially challenged the officers to come and get him but eventually came out on his own. (T. at 188-194).

{¶10} Victim 1 and Victim 2 were standing outside the building when the officers brought Appellant outside and as he walked past the women, Appellant kicked Victim 1 and then began fighting the officers. Appellant grabbed Officer Coates's pinky finger and tried to twist and break it. After some struggle, the officers managed to secure Appellant in the police cruiser. (T. at 194-197).

**{¶11}** Three Canton police officers entered the apartment to make sure that no one else was inside. Footage from their body cameras shows only one furnished room in the apartment - a bedroom. The bedroom contained both male and female clothing items. A second bedroom just had a mattress on the floor.

**{¶12}** Officer Coates stated that he had had previous interactions with Appellant and Victim 1 which led him to understand that the two lived together.

**{¶13}** Victim 1 told Officer Coates that evening that she would not cooperate with prosecution if Appellant was charged. This too was captured on the body camera video. (T. at 197-198, 211-219, 231-232). Sergeant Garren arrived on the scene to photograph the residence and Victim 1. There was some blood splatter in the bedroom and blood on the walls. Victim 1 had bite marks on her shoulder and back, a bloody nose, and additional injuries to her lip and the back of her neck. Victim 2 was sore for a few days after the incident from being slammed down on top of Victim 1. (T. at 159, 198- 204).

**{¶14}** As a result of these events, the Stark County Grand Jury later returned an indictment charging Appellant with one count of domestic violence, a third degree felony due to prior domestic violence convictions, one count of assault, and one count of resisting arrest.

**{¶15}** Appellant pled not guilty to the charges and rejected the state's offer of 18 months in exchange for his plea of guilty. Appellant elected to proceed to a jury trial which began on March 14, 2016.

**{¶16}** At trial, the state presented testimony from Victim 2 and Officer Coates, who gave the above outlined information to the jury. A video containing body camera footage from several officers was also played for the jury. Victim 1, as promised, failed to appear

at trial on the first day. She did, however, appear the following morning, dramatically hysterical. Victim 1 claimed her brother had died the previous evening, that she was "unstable," and that she had been drinking since 9:00 p.m. the evening before. The trial court allowed Victim 1 to be called as a court's witness and further found her competent to testify. (T. at 231-232, 253-255, 257).

{¶17} Victim 1 denied that she and Appellant lived together or had any significant relationship. According to Victim 1, she has many "everythings" and "husbands" because she simply tells men what they want to hear. She also testified that she knows the difference between a simple assault and domestic violence and that domestic violence requires a "child or a relationship with that person" to support a conviction. (T. at 263-268).

{¶18} The jury deliberated for two hours and forty-two minutes and returned verdicts of guilty as charged.

{¶19} The trial court immediately proceeded to sentencing wherein it sentenced Appellant to 36 months incarceration for domestic violence, 180 days for assault, and 90 days for resisting arrest. Appellant was ordered to serve the sentences concurrently.

{¶20} Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶21} "I. APPELLANT'S CONVICTION OF DOMESTIC VIOLENCE WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE THAT [VICTIM 1] WAS APPELLANT'S "FAMILY OR HOUSEHOLD MEMBER."

{¶22} "II. APPELLANT'S CONVICTION OF ASSAULT AGAINST [VICTIM 2] WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

**I., II.**

{¶23} In his two Assignments of Error, Appellant argues that his convictions for domestic violence and assault were against the manifest weight and sufficiency of the evidence. We disagree.

{¶24} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541.

{¶25} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

{¶26} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks, supra*. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The relevant inquiry is whether, after viewing

the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶27} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Roberts* (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Cuyahoga Falls v. Scupholm* (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, unreported.

{¶28} In determining whether a conviction is against the manifest weight of the evidence, an appellate court: "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶29} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 388, 678 N.E.2d 541. An appellate court must make every reasonable presumption in favor of the judgment and Findings of Fact of the trial court. *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350. "The verdict

will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Clemons* (1998), 82 Ohio St.3d 438, 444, 696 N.E.2d 1009, citing *State v. Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d 492. Therefore, this Court's "discretionary power * * * should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; *See, also*, *Otten,* 33 Ohio App.3d at 340, 515 N.E.2d 1009.

**{¶30}** In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." *Id*. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Id*. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.

**{¶31}** In the case *sub judice*, Appellant was convicted of domestic violence in violation of R.C. §2919.25, and assault, in violation of R.C. §2903.13 which state:

**{¶32}** R.C. 2919.25(A) **Domestic Violence**

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
>
> ***

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

**{¶33}** A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. §2901.22(B).

**{¶34}** "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. §2901.01(A)(3).

**{¶35}** Appellant argues that the State failed to prove that Victim 1 was a family or household member.

**{¶36}** In *State v. Williams,* 79 Ohio St.3d 459, 465, 683 N.E.2d 1126.*,* the Ohio Supreme Court addressed the definition of "cohabitation" as follows:

> [W]e conclude that the essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

**{¶37}** The Court further defined cohabitation in *State v. McGlothan*, finding where the state demonstrated the defendant was the victim's boyfriend and they had lived together for about a year, the state had no obligation to demonstrate the sharing of familial or financial responsibilities and consortium to prove cohabitation. 138 Ohio St.3d 146, 149, 2014-Ohio-85, 4 N.E.3d 1021, ¶15.

**{¶38}** As set forth above, Victim 1, in her testimony, denied that she and Appellant lived together. However, at trial, Officer Coates testified that he had prior dealing with

Appellant and Victim 1 and that in those prior interactions, he was given the impression that the two lived together. He further stated that the only furnished room in the apartment was one of the bedrooms and that bedroom contained a bedroom set and both male and female clothing. Additionally, Victim 1 admitted that she had a sexual relationship with Appellant, that she refers to him as her husband, and that the bedroom set was acquired by Appellant at Rent-a-Center. The jury was also given the opportunity to view the apartment via the video from the officer's body camera.

{¶39} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Victim 1 was a family or household member and that Appellant inflicted physical harm on Victim 1. We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support Appellant's conviction.

{¶40} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment

and the finding of facts. * * *.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility *420 of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002-Ohio-3405, 2002 WL 1454025, ¶ 9, *citing State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

**{¶41}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.' " *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, 2008 WL 5245576, ¶ 31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist.2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002 WL 407847, at ¶ 13, *citing State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶42}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶43}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP-739, 2000 WL 297252 (Mar. 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶44}** We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Appellant of the charge of domestic violence

**{¶45}** Based upon the foregoing and the entire record in this matter, we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Appellant's testimony. This Court will not

disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker,* 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt.

**{¶46}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of domestic violence beyond a reasonable doubt.

<u>ASSAULT</u>

**{¶47}** Appellant was also charged with one count of assault as to Victim 2:

**{¶48}** R.C. §2903.13 **<u>Assault</u>**

**{¶49}** (A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

**{¶50}** A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. §2901.22(B).

**{¶51}** "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. §2901.01(A)(3).

**{¶52}** Appellant specifically claims that because the only witness to the assault charge was Victim 2 herself, that her testimony was not credible, the conviction cannot stand.

**{¶53}** At trial, Victim 2, testified that when she was attempting to break up the fight between Appellant and Victim 1, Appellant picked her up and threw her down on top of Victim 1. She also stated that she was sore for days after the altercation. (T. at 153-154, 159).

**{¶54}** Ohio courts have held that the testimony of one witness, if believed by the jury, is sufficient to support a conviction. The issue of witness credibility is a matter within the province of the jury. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

**{¶55}** Victim 2's testimony alone, if believed, supports the conviction for assault. There is no requirement for the State to produce corroborating evidence.

**{¶56}** Here, the jury chose to believe Victim 2's testimony and to find that the evidence presented by the State met that burden of persuasion.

**{¶57}** Accordingly, Appellant's First and Second Assignments of Error are overruled.

**{¶58}** For the reasons stated in the foregoing opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Wise, John, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 0227