[Cite as *State v. Barnes*, 2020-Ohio-1534.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                  Court of Appeals No. L-18-1264

    Appellee                              Trial Court No. CR0201702890

v.

Jewellian Barnes                          **DECISION AND JUDGMENT**

    Appellant                            Decided:  April 17, 2020

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1}  Appellant, Jewellian Barnes, appeals the judgment of the Lucas County Court of Common Pleas, convicting him, following a jury trial, of one count of burglary, and one count of possessing criminal tools.  For the reasons that follow, we affirm.

**I.  Facts and Procedural Background**

{¶ 2}  On October 30, 2017, the Lucas County Grand Jury indicted appellant on one count of burglary in violation of R.C. 2911.12(A)(2) and (D), a felony of the second degree, and one count of possessing criminal tools in violation of R.C. 2923.24(A) and

(C), a felony of the fifth degree. The charges arose from a break-in at the home of James Brunt on August 31, 2017.

{¶ 3} The matter proceeded to a jury trial beginning on September 24, 2018. At the trial, the state called four witnesses.

{¶ 4} The first witness to testify was Toledo Police Officer Mark Johnson. Johnson was responsible for obtaining security video from a Children's Discovery Center that was located adjacent to Brunt's property. The video he obtained was a recording from approximately 9:30 p.m. on August 31, 2017, to 1:00 a.m. on September 1, 2017.

{¶ 5} James Brunt testified next. Brunt testified that on August 31, 2017, he and his wife left their home at approximately 7:00 p.m., and returned at approximately 10:30 p.m. When he returned, Brunt discovered that the sliding door from his dinette to the back, screened-in porch was open, which was not how it was when he left. He then went to the back porch and discovered that one of the screens had been slit, and the outer storm door was standing open. He also testified that a motion sensor light on the back porch had been smashed.

{¶ 6} Brunt called the police, and two officers responded. After the officers left, Brunt took some pictures, and then began cleaning up the ransacked home. Brunt testified that when he picked up a sweatshirt off of the floor in his walk-in closet, he discovered a pry bar that he knew was not his. Brunt picked up the pry bar by the edges using a paper towel and placed it in a plastic bag. He testified that neither he nor his wife ever touched the pry bar with the skin of their hands.

2.

{¶ 7} Brunt then testified regarding the items that were stolen. That list included his 60-inch television, his retirement watch given to him by his father, his wife's jewelry, a pump shotgun, and eight or nine handguns. Brunt testified that the value of the property that was stolen was approximately $18,000.

{¶ 8} The state next played the security video that was recovered by Officer Johnson. Brunt testified that in the video, a person could be seen along the fence line of Children's Discovery Center, abutting Brunt's property. At approximately 9:39 p.m., the person, whom Brunt describes as a "guard," walked over to look at the stolen items collected from Brunt's home. The guard was talking on a phone in the video. On cross-examination, Brunt acknowledged that he could not make out the gender, race, or ethnicity of the person described as the guard. At approximately 1:01 a.m., a PT Cruiser arrived. The driver and passenger exit the vehicle and can be seen loading the television and pillow cases full of items. The PT Cruiser left at 1:04 a.m.

{¶ 9} The third witness to testify for the state was Andrea Weisenburger, who is a forensic scientist in the DNA section of the Ohio Bureau of Criminal Investigation. Wiesenberger testified that the pry bar was submitted for DNA analysis. The results of that analysis showed a major DNA profile that was consistent with the known DNA profile of appellant. Weisenburger testified that the probability of finding another person who matched that profile would be one in one trillion.

{¶ 10} The state's final witness to testify was Toledo Police Detective Brian Lewandowski. Lewandowski testified that after he was assigned the case on

3.

September 2, 2017, he examined the torn screen at Brunt's home, and determined that it was not cut with a knife, but rather that the screen was tattered and had been ripped open. Lewandowski believed that the screen was torn open with the pry bar. Lewandowski also testified that the pry bar recovered from Brunt's home was worn and looked like it had been used quite often. He stated that he did not test the pry bar for fingerprints because that would have contaminated the evidence for any possible DNA testing.

{¶ 11} After receiving information that appellant's DNA was on the pry bar, Lewandowski conducted an interview with appellant. According to Lewandowski, appellant denied that his DNA could have been on the pry bar found at the scene of the burglary because he was not there. Appellant, however, did not offer any explanation as to how his DNA could have been on the pry bar.

{¶ 12} Lewandowski then testified regarding other steps that were or were not taken as part of his investigation. He testified that he contacted Estate Jewelers, which he believed would be the location where the jewelry would be sold, but he did not recover any of the stolen jewelry. He also testified that he did not pursue any phone records or phone triangulation to attempt to determine appellant's location or to identify the "guard" because he never had appellant's phone number or the number of the phone that was used by the guard.

{¶ 13} On cross-examination, Lewandowski testified that he ran appellant's name through the LEADS system, which reported that appellant had not pawned or sold any

4.

items that were stolen from Brunt. He also testified that appellant did not drive a PT Cruiser.

{¶ 14} Regarding the issue of phones and phone searches, Lewandowski acknowledged that when appellant was arrested, three of his phones were seized. However, Lewandowski did not make any attempt to get any of appellant's phone numbers, or to extract any information from the phones. In addition, Lewandowski did not request a "tower dump," which would have provided a list of all phone numbers that had used the cell phone tower near Brunt's home.

{¶ 15} As to other steps that he could have taken, Lewandowski admitted that he did not interview any of Brunt's neighbors, nor did he contact the church across the street to see if it had any security video that would have shown the burglary. Lewandowski also did not check for any latent fingerprints inside of Brunt's home because everything had been cleaned up and put away prior to his arrival, but he did agree that latent fingerprints could have remained. Finally, Lewandowski did not conduct a search through the national database for the stolen firearms.

{¶ 16} Following Lewandowski's testimony, the state moved for admission of its exhibits and then rested. Appellant then made a motion for acquittal pursuant to Crim.R. 29, which the trial court denied. Appellant then rested without calling any witnesses. Ultimately, the case was submitted to the jury, which returned with a verdict of guilty as to both counts.

5.

{¶ 17} Sentencing was held on October 31, 2018. Appellant was ordered to serve five years in prison on the count of burglary, and ten months in prison on the count of possessing criminal tools. Those sentences were ordered to be served concurrently, for a total prison term of five years.

## II. Assignment of Error

{¶ 18} Appellant has timely appealed his judgment of conviction, and now asserts one assignment of error for our review:

1. Mr. Barnes' convictions are based on insufficient evidence and are against the manifest weight of the evidence and resulted in a violation of Mr. Barnes's rights and his right to due process and to a fair and reliable trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

## III. Analysis

{¶ 19} Insufficiency and manifest weight are distinct legal theories. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, when reviewing a manifest weight claim,

[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 20} In this case, appellant does not contest that the elements of the crimes of burglary and criminal possession of tools have been established. Instead, he argues that the evidence does not demonstrate that he was the person who committed those crimes. Appellant argues that the DNA evidence found on the pry bar only proves that his DNA made its way to the pry bar at some point. Because DNA can last on an object for a substantial period of time, appellant contends that it does not prove that he used the pry bar on the night in question. Appellant concludes that the presence of his DNA on the pry bar, absent any corroborating evidence such as fingerprints, cell phone location, eyewitness testimony, video recordings, or possession or sale of the stolen property, is insufficient to demonstrate beyond a reasonable doubt that he was the offender, and the jury lost its way for so finding.

7.

{¶ 21} Addressing appellant's sufficiency argument first, we find that when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that appellant was the person who committed the crimes. "Ohio courts have held that the testimony of one witness, if believed by the jury, is sufficient to support a conviction." *State v. Bartulica*, 6th Dist. Erie No. E-17-065, 2018-Ohio-3978, ¶ 43, quoting *State v. Williams*, 5th Dist. Stark No. 2016 CA 00074, 2017-Ohio-803, ¶ 54. We find it to be equally true that one piece of evidence, if compelling, is sufficient to support a conviction. Here, appellant was the major contributor of DNA on a pry bar found inside Brunt's ransacked home. The most obvious inference to be made from that fact is that appellant was the person who carried the pry bar into the home. Therefore, we hold that appellant's convictions are not based upon insufficient evidence.

{¶ 22} Furthermore, we find that this is not the exceptional case where the evidence weighs heavily against the conviction and the jury clearly lost its way. While there was not a multitude of evidence tying appellant to the crimes, the evidence of appellant's DNA on the pry bar weighs heavily in favor of his guilt. Therefore, we hold that appellant's convictions are not against the manifest weight of the evidence.

{¶ 23} Accordingly, appellant's assignment of error is not well-taken.

8.

## IV.  Conclusion

**{¶ 24}** For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.              _____
JUDGE

Christine E. Mayle, J.

    _____

Gene A. Zmuda, P.J.                             JUDGE
CONCUR.

    _____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.