[Cite as *State v. Johnson*, 2025-Ohio-1962.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Andrew J. King, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| DION L. JOHNSON | : | Case No. 2024CA00123 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2024-CR-0229


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      May 29, 2025


APPEARANCES:

For Plaintiff-Appellee

Kyle L. Stone
Stark County Prosecuting Attorney
Vicki L. DeSantis
Assistant Prosecuting Attorney
110 Central Plazza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

D. Coleman Bond
116 Cleveland Ave NW, Suite 600
Canton, Ohio 44702

*Gormley, J.*

**{¶1}** At the conclusion of a bench trial in Stark County, Defendant Dion L. Johnson was convicted on multiple criminal charges arising out of an alleged fight between him and his girlfriend. Though he argues here that his convictions were not supported by the evidence, we find otherwise and now affirm.

## Facts and Procedural History

**{¶2}** In January 2024, police officers from the city of Alliance, Ohio were called to the scene of a reported incident of domestic violence at an apartment complex. When the officers arrived at the complex, they encountered the alleged victim, who was partially naked, dripping wet, and visibly distraught. That victim — who had fled to a neighbor's apartment — told the officers that Johnson had attacked her, and she reported that Johnson was still inside the apartment where she claimed the attack had occurred.

**{¶3}** The officers approached that unit and found Johnson inside. The officers took Johnson into custody, read him his *Miranda* rights, and began questioning him about the victim's allegations. Johnson told them that he had poured water on the victim and that he had "mugged the fuck out of her."

**{¶4}** The victim was transported to a local hospital where her injuries were evaluated and photographed. Hospital staff observed redness on her face and neck, and they saw bruising on her arms, hips, and right breast. A police officer followed up with the victim several days after the alleged incident, and he observed petechia in her eyes then.

**{¶5}** Once the police officers completed their investigation, Johnson was charged with four crimes: felonious assault, two counts of strangulation, and domestic

violence. Johnson opted for a bench trial, where he was convicted on the felonious-assault and domestic-violence charges and on one of the strangulation charges. The judge found Johnson not guilty on the other (more serious) strangulation charge. Johnson now appeals.

**Johnson's Strangulation Conviction Was Supported by Sufficient Evidence**

{¶6} In his first assignment of error, Johnson argues that the state failed to produce evidence that was sufficient to support his strangulation conviction.

{¶7} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Pountney* at ¶ 19. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶8} For Johnson to be convicted of strangulation under R.C. 2903.18(B)(3) — the charge on which he was found guilty — the state was required to introduce evidence that Johnson knowingly "[c]ause[d] or create[d] a substantial risk of physical harm to another by means of strangulation or suffocation." A violation of R.C. 2903.18(B)(3), though normally a fifth-degree felony, is a fourth-degree felony when — as the trial judge

found here — the victim is "a family or household member, or is a person with whom the offender is or was in a dating relationship." R.C. 2903.18(C)(3).

{¶9} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "The intent with which an act is committed may be inferred from the act itself." *State v. Asp*, 2023-Ohio-290, ¶ 40 (5th Dist.).

{¶10} A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Strangulation or suffocation" is "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth." R.C. 2903.18(A)(1).

{¶11} A "family or household member" can be "a spouse, a person living as a spouse, or a former spouse of the offender" who has resided with the offender. R.C. 2919.25(F)(1)(a)(i). A "dating relationship" is "a relationship between individuals who have, or have had, a relationship of a romantic or intimate nature." R.C. 3113.31(A)(8).

{¶12} The victim testified at Johnson's bench trial, and her testimony established each required element of strangulation. She testified that Johnson grabbed her by the neck and choked her, and she testified, too, about physical harm that she experienced from that choking. The victim also testified that she and Johnson lived together in a romantic relationship for eight months prior to the alleged incident.

**{¶13}** This court has long recognized that the testimony of a single victim can be sufficient to support a conviction. *State v. Williams*, 2017-Ohio-803, ¶ 54 (5th Dist.). Because the testimony of the victim in this case was legally sufficient to support a conviction on each element of the fourth-degree-felony strangulation charge, Johnson's first assignment of error is overruled.

## Johnson's Convictions Were Not Against the Manifest Weight of the Evidence

**{¶14}** In his second assignment of error, Johnson argues that his felonious-assault, domestic-violence, and strangulation convictions were against the manifest weight of the evidence.

**{¶15}** "In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trial court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶16}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" (Bracketed text in original.) *State v. Williams*, 2024-Ohio-5578, ¶ 61 (5th Dist.), quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10

Ohio St.3d 77, 80 (1984). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

{¶17} Johnson's argument centers on the alleged unreliability of the state's evidence. The evidence at trial established that, in the hours after the alleged incident, the victim was intoxicated and had a blood-alcohol level of .354. The victim's intoxication — Johnson argues — is the underlying cause of any injuries, and it renders her testimony about him unreliable. Johnson suggests that it was the steep metal staircase installed at the apartment complex and the cluttered interior of the apartment that, he says, caused the victim to fall and injure herself. Johnson also argues that the testimony of the responding police officers was unreliable because those officers did not recognize that the victim was severely intoxicated when they first encountered her.

{¶18} The trial judge did not, however, lose her way in finding the state's witnesses credible. Though bloodwork at the hospital confirmed that the victim had a high blood-alcohol level, hospital staff reported that she was alert and oriented and that she was not confused or cognitively impaired. The victim, moreover, was able to walk, dress herself, descend an outdoor staircase, and write a police statement without assistance from the responding officers.

{¶19} Nor did the trial judge lose her way in concluding that the victim's injuries were caused by Johnson. The evidence showed that, in addition to the substantial bruising on her body, the victim's stomach lining was torn, three of her ribs were fractured, and her voice was raspy and hoarse. These injuries were consistent with, and were corroborated by, the victim's testimony about what Johnson did to her. Johnson's

statement to the police that he "mugged" the victim, and a subsequent recorded jailhouse phone call — during which Johnson apologized to the victim and told her that he did not know what he was capable of doing — also corroborated her account of what happened that night.

{¶20} Mindful of the presumption in favor of the trial judge's findings of fact at a bench trial, we see a rational basis in the record for the judge's verdicts. Johnson's convictions were, therefore, not against the manifest weight of the evidence.

{¶21} Johnson's second assignment of error is overruled, and the judgment of the trial court is affirmed.

By: Gormley, J.

Hoffman, P.J. and

King, J. concur.