[Cite as *State v. Burton*, 2025-Ohio-2267.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| ADAM BURTON | : | Case No. 2024CA00122 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 2024CR0036

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            June 27, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE L. STONE                             AARON KOVALCHIK
PROSECUTING ATTORNEY                      401 Tuscarawas Street West
STARK COUNTY, OHIO                        Canton, OH  44702

By:  Christopher A. Piekarski
     110 Central Plaza South
     Suite 510
     Canton, OH  44702-1413

*King, J.*

{¶ 1}   Defendant-Appellant Adam Burton appeals the July 9, 2024 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Burton is the biological father of the victim in this matter, Jane Doe. Doe's mother and Burton married in 2007. Mother had a son from a previous relationship, Joe Doe. Burton and Mother had two children, Mary Doe in 2007 and Jane Doe in 2008. This matter arose upon allegations that Burton sexually assaulted Jane. An investigation into the matter produced the following facts.

{¶ 3}   The Burton family originally lived in central Ohio. They moved to Massillon when Jane was 7 or 8 years old, and then to Canton in 2019.

{¶ 4}   By the time they moved to Massillon, Burton and Mother's marriage was troubled to the point that they kept separate bedrooms. Mother worked 12-hour night shifts. Burton worked daytime hours at Circle K while they lived in Massillon and at BP when they moved to Canton. In both the Massillon and Canton homes, mother slept in the living room.

{¶ 5}   Burton began sexually abusing Jane at the Massillon home when she was 7 or 8. The first incident she recalls was Burton waking her up as she slept on the sofa and asking her to touch his penis. When she hesitated, Burton told her he would be upset if she did not do as he asked. Thereafter, the abuse became a regular occurrence. While at the Massillon home Jane often woke to find Burton's penis in her hand, he touched her

both over and under her clothing, and engaged in cunnilingus. The first time cunnilingus took place, Jane was 8 or 9 years old.

{¶ 6} The abuse continued and escalated after the family moved to Canton. There, Burton would beg Jane to perform fellatio and forced her to do so on one occasion. Burton attempted to put his penis in Jane's anus on approximately five occasions. When she was 12, Burton began having vaginal sex with her and bought her a vibrator. Burton would ingest something he called honey packs before he would assault Jane. Burton did not use condoms and Jane feared becoming pregnant. These things happened every night to every other night while she lived in or visited the Canton home. Burton told Jane that if she ever told anyone, he would kill her and then himself.

{¶ 7} Mary noticed that Burton treated Jane differently than she and Joe. Burton seemed to favor Jane, bought her extra things, and would take Jane out to eat but not her or Joe. At the Canton home, Mary discovered Burton was watching father-daughter pornography when she looked at the internet history on his laptop while looking for the password for a streaming service she wanted to use. Mary showed Joe, but did not immediately say anything to anyone else.

{¶ 8} Mother and Burton eventually separated and Mother moved out of the Canton home. Mary and Joe stayed with Burton. Jane moved out with Mother, but continued to visit on weekends. When she visited, she slept with Burton. During one of Jane's visits, Mary heard concerning noises coming from Burton's room and went to investigate. She found Burton in bed with Jane. Burton immediately told Mary to go get a lighter out of his truck. Mary did that, and when she returned she noticed Jane looked upset.

{¶ 9}   Following that incident, Mary told Mother what happened, what she saw in Burton's search history, and that she suspected something inappropriate was happening between Burton and Jane. Mother then asked Jane if Burton had ever touched her inappropriately or hurt her. At first Jane denied anything had happened. Mother then assured Jane she was not in trouble. Jane began crying and told her mother of the abuse.

{¶ 10} Mother reported the matter to police. Canton police officers executed a search warrant at Burton's home and located the vibrator described by Jane and the honey packs which a detective described as an over-the-counter herbal erectile dysfunction supplement. During an interview with police, Burton admitted to buying the vibrator for Jane and watching her use it. Burton terminated the interview before officers questioned him further. Jane was seen by medical professionals and participated in a forensic interview. Her physical exam was normal.

{¶ 11} As a result of these events, on January 23, 2024, the Stark County Grand Jury returned an indictment charging Burton as follows:

{¶ 12} Count one: Rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree;

{¶ 13} Count two; Sexual battery in violation of R.C. 2907.03(A)(5), a felony of the third degree;

{¶ 14} Count three: Gross sexual imposition in violation of R.C. 2907.05(A)(4), and

{¶ 15} Count four: Pandering obscenity involving a minor or impaired person in violation of R.C. 2907.321(A)(1)(C), a felony of the second degree.

{¶ 16} The State dismissed count four of the indictment prior to trial. Burton elected to proceed to a jury trial on the remaining charges. Trial began on June 10, 2024. The

State presented evidence from Jane, Mary, Joe, Mother, two Canton Police Department officers, a worker from Stark County Children's Services and the nurse practitioner who examined Jane. Burton testified on his own behalf. After hearing the evidence and deliberating, the jury convicted Burton as charged. Burton was subsequently sentenced to an aggregate prison term of 20 years to life.

{¶ 17} Burton filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 18} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST AND SUFFICIENCY OF THE EVIDENCE."

II

{¶ 19} "THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF PRIOR BAD ACTS."

III

{¶ 20} "APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE CONSTITUTION, BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

{¶ 21} In his first assignment of error, Burton argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

Standard of Review

{¶ 22} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

The Charges

{¶ 23} Burton was charged with rape pursuant to R.C. 2907.02(A)(1)(b) which required the State to prove Burton engaged in sexual conduct with Jane when she was less than 13-years of age. The indictment contained to wit language indicating the State alleged Jane was between 8 and 12 when the sexual conduct occurred. The jury verdict form included a special finding wherein the jury determined Jane was less than 10 years of age when the rape took place. Docket at 35.

{¶ 24} Burton was further charged with sexual battery pursuant to R.C. 2907.03(A)(5) which required the State to prove Burton engaged in sexual conduct with Jane and that he was Jane's biological father.

{¶ 25} R.C. 2907.01(A) defines sexual conduct as:

[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 26} Finally, Burton was charged with gross sexual imposition pursuant to R.C. 2907.05(A)(4) which required the State to prove Burton engaged in sexual contact with Jane when Jane was less than 13 years of age.

{¶ 27} R.C. 2907.01(B) defines sexual contact as: [A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

Sufficiency of the Evidence

{¶ 28} Burton first argues the State failed to produce sufficient evidence of sexual conduct occurring when Jane was between 8 and 12 years old. Burton specifically argues that Jane testified "she was 12 years of age when she was first sexually penetrated by

her father" and therefore presumably argues Jane was not under 10 years of age. Brief of Appellant at 11. Burton's argument ignores Jane's testimony detailing Burton performing cunnilingus when she was 8 or 9 years old:

> [Jane Doe]: The first time I was 8 or 9. I was in my mom's bedroom because me and my sister and my mom shared a bedroom at that time. And I woken up [sic] with him licking my vagina and I would squeeze my legs together because I didn't like it and it was uncomfortable.

{¶ 29} Transcript of trial, volume two (T(II)), 77.

{¶ 30} So too, Burton ignores Jane's testimony detailing an incident of fellatio. Jane testified vaginal intercourse began when she was 12 and this incident took place before any vaginal intercourse:

> [The State]: When your family moved to the house in Canton, did the abuse continue?
>
> [Jane]: Yes ma'am.
>
> [The State]: Did things get worse?
>
> [Jane]: Yes ma'am.
>
> [The State]: What types of things would he begin doing?
>
> [Jane]: He would beg me all the time to suck his penis.
>
> [The State]: Did you ever have to do that?

[Jane]: Just once.

[The State]: What do you recall about that event?

[Jane]: It was very gross. It smelled really bad. It was just gross.

{¶ 31} T(II), 78.

{¶ 32} Finally, Jane also testified that before Burton began to vaginally rape her, he would digitally penetrate her and "have me put hairbrushes up there to try to like make it less tight." T(II), 79-80.

{¶ 33} Based on the foregoing, we find the State presented sufficient evidence of sexual conduct to support Burton's convictions for rape and sexual battery. While Burton complains there was no physical evidence of sexual conduct to support the convictions, no physical evidence is required. Burton also complains the State failed to produce evidence to corroborate Jane's testimony. Even if that were true, it is axiomatic that the testimony of one witness believed by the trier of fact is sufficient to prove any fact, and the jury in this matter was so instructed. *State v. Williams*, 2017-Ohio-803, ¶ 54 (5th Dist.); T(III), 90.

{¶ 34} Likewise, we find the State produced sufficient evidence to prove sexual contact. Jane testified that the abuse began with sexual contact when she was 7 or 8 years old:

[The State]:  Do you remember about how old you were when you moved to Massillon?

[Jane]: 7 or 8.

[The State]: Okay. In that house in Massillon, was inappropriate stuff going on with your dad in that house?

[Jane]: Yes, ma'am.

[The State]: Okay, can you tell me about the first time you remember something inappropriate happening with your dad?

[Jane]: My dad had just been kicked out, but he would still visit sometimes. He slept on the couch and sometimes I would sleep on there with him because I felt bad. And he woke me up with his penis in my hand wanting me to touch it, but I said I did not want to. He said please, daddy will be upset if you don't.

[The State]: What kinds of other things would he do when this first all began?

[Jane]: He would touch my vagina. I would wake up with his penis in my hand almost all the time. Oral sex, stuff like that.

[The State]: When he would touch your vagina, was that touching over the clothing or underneath your clothes.

[Jane]: Both.

[The State]: And when you woke up with his penis in your hand, was it his bare penis?

[Jane]: Yes.

{¶ 35} T(II) 76-77.

{¶ 36} Jane's testimony regarding sexual contact, if believed by the trier of fact, was sufficient to support Burton's conviction for gross sexual imposition.

## Manifest Weight

{¶ 37} Burton additionally argues his convictions were against the manifest weight of the evidence. He again argues the State failed to produce any corroborating or physical evidence to support the charges. But as noted above, neither is required.

{¶ 38} Jane provided a consistent and detailed accounting of sexual assault at the hands of her father which took place over several years. She did not simply give an accounting of various forms of sexual conduct and contact. Rather, she provided specific details such as how painful Burton's attempts at anal sex were, and that he used Vaseline to attempt to complete the assault. She testified she was repulsed by Burton's body odor during fellatio. Jane told the jury how Burton talked to her about her hymen, leading her to believe it was something that needed to be "broken" before vaginal penetration could be achieved, showed her "deflowering" pornography videos, and made her do things to make her vagina "less tight" so that he could engage in vaginal intercourse with her. T(II) 78-81. Nurse practitioner Alissa Edgein explained to the jury that with the exception of a rare birth defect, the hymen is a ring of tissue around the vagina, not tissue that covers the vagina. She further explained that injury to the genital mucus membranes heals very quickly and she would not expect to see injury to Jane's genitalia as too much time had passed since the last assault. Edgein further explained that it is a myth that a medical professional can determine whether penetration of the vagina has occurred. T(II) 133, 143-144, 153-154.

{¶ 39} Moreover, Burton himself provided corroborating evidence during his interview with law enforcement by admitting he bought a vibrator for Jane and watched her use it, that he slept in the same bed with Jane, and that he woke with her hand on his erect penis. T(II) 173, 192-195, State's exhibit 3A. While Burton attempted to convince the jury at trial that police officers had pressured into admitting these things, the jury was free to accept or reject any or all of Burton's testimony. Additionally, during the execution of a search warrant, officers located the vibrator Burton purchased for his then 12-year-old daughter and the "honey packs" she stated Burton used before assaulting her, telling her "they were to make his penis harder and to last longer." Officers also confirmed Burton's laptop had numerous searches for father-daughter pornography. T(II) 82, 169-172. We find the jury did not lose its way in believing the testimony of the State's witnesses and rejecting Burton's testimony.

{¶ 40} Burton's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

II

{¶ 41} In his second assignment of error, Burton argues the trial court erred in allowing testimony of prior bad acts. We disagree.

Standard of Review

{¶ 42} The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269, 271 (1991); *State v. Sage*, 31 Ohio St.3d 173, (1987). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or

unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process that would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 43} Here, Burton did not object to testimony he complains of, and has therefore forfeited all but plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, Burton bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

Other Acts Evidence

{¶ 44} Evidence Rule 404(B) provides:

> (B) Other Crimes, Wrongs or Acts.
>
> (1) Prohibited Uses. Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a

particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The proponent of evidence to be offered under this rule shall:

(a) provide reasonable notice of any such evidence the proponent intends to introduce at trial so that an opposing party may have a fair opportunity to meet it;

(b) articulate in the notice the permitted purpose for which the proponent intends to offer the evidence, and the reasoning that supports the purpose; and

(c) do so in writing in advance of trial, or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

{¶ 45} Other acts evidence is prohibited "when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 2020-Ohio-4441 ¶ 36.

Burton's Complaints

{¶ 46} Burton takes issue with two portions of trial testimony; Mary Doe's testimony that Burton slapped her butt and touched her inner thighs and Mother's testimony that she had seen Burton hit the children. T. (I) 267; T.(II) 22.

{¶ 47} First, as noted by the State, it was Burton who first raised the issue of physical discipline in opening statement. At the beginning of trial, it appears the defense theory of the case was that Burton was the disciplinarian of the family which presumably gave Mary the motive to fabricate the allegations:

> [Counsel for Burton]: You will hear [Burton] was a disciplinarian, that Adam did use his hands, that [Burton] did discipline [Mary], that [Burton] accused her of stealing from him. You will hear about how [Mary] will go for months without seeing her dad.
>
> Again, disciplinary issues, accusing her of stealing. Just listen.

{¶ 48} T(I) 243.

{¶ 49} On direct exam, the State asked Mary if Burton had ever touched her "inappropriately or sexually." T(I) 266. Mary replied Burton had never touched her private parts, but liked slapping her butt and touching her inner thighs. T(I) 267. On cross examination counsel for Burton asked:

> [Counsel for Burton]: Your dad and you have also not gotten along at times, correct?
>
> [Mary]: Yes, sir.
>
> [Counsel for Burton]: And I apologize for bringing this up, He punished you at times, correct?
>
> [Mary]: Yes, sir.

[Counsel for Burton]: He would actually hit you, right?

[Mary]: Yes, sir.

[Counsel for Burton]: In fact, one time he hit your face and bloodied your nose, correct?

[Mary]: Yes, sir

{¶ 50} T(I) 271.

{¶ 51} Mother testified after Mary. On direct examination, Mother appears to have misinterpreted a question by the State:

[The State]: Did you ever witness any of the physical abuse happening?

[Mother]: Physical abuse, yes. I have seen him hit the children and stuff like that.

[The State]: I'm sorry. I mean more like the physical touching types of sexual abuse.

[Mother]: No, no. I have never seen him do that.

{¶ 52} T(II) 22.

{¶ 53} As to Mother's testimony, by the time she testified, counsel for Burton had already raised the issue of Burton striking Mary. Burton cannot therefore complain that the trial court erred in permitting the admission of this testimony when his counsel had had invited the error by previously eliciting the same testimony from Mary. *State v. Hare*,

2018-Ohio-765, ¶ 45 (2d Dist.). Burton therefore fails to establish plain error as to Mother's testimony.

{¶ 54} Next, even assuming, arguendo, that Mary's testimony regarding Burton slapping her butt and touching her inner thighs should not have been admitted, we find its admission does not rise to the level of plain error. As set forth in the first assignment of error, the evidence presented by the State weighed heavily in favor of guilty verdicts. Jane's testimony was consistent and detailed, Burton made incriminating statements during his interview with police, and a search warrant produced items Jane stated were used in the assaults. We therefore find Burton has failed to establish the outcome of the trial would have been different but for the admission of this testimony.

{¶ 55} Finally, Burton argues the State failed to file a motion to permit the above outlined testimony pursuant to 404(B)(2)(a), and therefore the testimony should have been excluded despite counsel's failure to object to the same. The 2012 Staff Note to Evid.R. 404 indicates "[t]he purpose of adding the notice requirement is to provide the prosecution and the defense with the opportunity to prepare their case." The staff note further states "[t]he rule should not be construed to exclude otherwise relevant and admissible evidence solely because of a lack of notice, absent a showing of bad faith." Burton does not argue the evidence was presented in bad faith or that he was surprised by the evidence, nor would the record support such findings.

{¶ 56} Burton has failed to establish that the admission of the above outlined evidence was plain error. Accordingly, the second assignment of error is overruled.

III

{¶ 57} In his final assignment of error, Burton argues his trial counsel rendered ineffective assistance when he failed to object to evidence of prior bad acts. We disagree.

Standard of Review

{¶ 58} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Thus, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 59} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 2014-Ohio-5544, ¶ 18 (8th Dist.).

{¶ 60} Burton again challenges the same testimony of Mother and Mary as outlined in the second assignment of error. In this assignment of error, Burton faults his counsel for failing to challenge the admission of prior bad acts and for eliciting testimony of a prior bad act.

{¶ 61} For the reasons set forth in our discussion of Burton's second assignment of error, we find Appellant has not demonstrated that had counsel objected or had refrained from eliciting testimony regarding disciplinary action of Mary by Burton, that the result of the proceeding would be different.

{¶ 62} The final assignment of error is overruled.

{¶ 63} The judgment of the Stark County Court of Common Pleas is affirmed.


By: King, P.J.

Montgomery, J. and

Popham, J. concur.