OPINION *Page 2 
{¶ 1} Defendant-appellant Walter Batrez appeals his conviction and sentence in the Richland County Court of Common Pleas for one count of domestic violence, a felony of the fourth degree in violation of R.C. 2919.25. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant and his wife, Starlette Batrez, had a rather turbulent relationship. During their marriage, there were instances of the appellant acting violently towards Starlette, and vice versa. Shortly after they were married in February of 2003, appellant slammed Starlette onto a mattress, causing injury to her face and shattering vertebrae in her neck. Because of that incident, he was convicted of aggravated assault and served six months in prison.
 {¶ 3} While appellant was incarcerated, Starlette continued the relationship, writing to him several times a day, and sending him boxes of food, clothes and cards. The two immediately reunited upon his release from prison. According to Starlette, things were good for a month or two, and then appellant became controlling and abusive again. They would periodically separate, however, she always reunited with appellant because he was her husband and she loved him.
 {¶ 4} In the 2006, Starlette and her four sons moved into a house at 181 West First Street in Mansfield, Ohio. At trial, Starlette testified that she did not want appellant to know where they lived, but she needed his help with getting a truck to move, and lifting things that she was not physically capable of moving. She testified that she would *Page 3 
meet appellant at the bus station, or across the street at a car wash; however, he eventually learned where she lived.
 {¶ 5} On July 4, 2006, Starlette and appellant were still separated, but they remained in contact with each other. That day, appellant asked to come over to the house and stay the night. Starlette was not sure if it was a good idea, but agreed because she missed her husband.
 {¶ 6} When she went into the bedroom to go to bed, appellant had her cell phone and was looking at the numbers that were on it. He was upset because she had a phone message, and he wanted to know who had called her. Starlette told him that the message was from her counselor, confirming an appointment. Appellant did not believe her, and demanded to hear the message. He began cursing at Starlette and calling her names when she refused.
 {¶ 7} Starlette got into bed, and the argument continued. While they were lying side by side on the bed, she told appellant it was nothing and to quit arguing. Starlette lifted her right arm, brushed her hand against the appellant's cheek, and gave his shoulder a light shove. In response, appellant elbowed Starlette in the chest very hard.
 {¶ 8} Starlette testified that because of the blow, she was in a great deal of pain and laid on the bed moaning and gasping for breath. She then crawled over to the corner where she curled up into a ball and cried.
 {¶ 9} Starlette's son, Bobby Maltos, who had been sleeping on the floor next to the bed, woke up during the argument and saw appellant lift his arm. He then heard his mother moaning in pain. Bobby went over and held his mother's hand, attempting to comfort her. He then confronted the appellant, asking him why he had to hit his mother. *Page 4 
Appellant told Bobby to go back to sleep, and told Starlette to get up because she was being stupid and was faking being hurt.
 {¶ 10} Starlette testified that even though she was in pain and told appellant to leave her alone, he pulled her to her feet. She opened the bedroom door to go out into the living room; however, she closed the door when she saw her roommate coming down the stairs. She did not want her roommate to see that she and appellant were fighting because she was afraid her roommate would call the police.
 {¶ 11} When Starlette went back into the bedroom, appellant began to grab her again. She told him to let her go because he was squeezing her too hard and was hurting her. Starlette indicated that at that point, she lifted her arm and threatened to hit him if he did not let her go.
 {¶ 12} After appellant left, Starlette testified that she lay back down in bed and cried because of the pain. She did not call the police because Children's Services was coming to the house the next morning, and she did not want them to know that appellant had hurt her in front of her children.
 {¶ 13} When the Children's Services caseworker arrived the next morning, Starlette sat on the couch and talked to them as if nothing had happened.
 {¶ 14} As soon as the Children's Services worker left the house, Starlette testified that she walked to Med Central Hospital. In the emergency room, she reported that her husband had elbowed her in the chest, but stated that she did not want to call the police. However, as required by law, the hospital staff called the Mansfield Police to report the incident. When the police arrived, Starlette decided to cooperate and make a *Page 5 
report. She spoke with the officers and signed a domestic violence affidavit against appellant.
 {¶ 15} As a result, a warrant was issued for appellant's arrest. He was arrested on the warrant on July 15, 2006, after fleeing Starlette's house when the police came looking for him.
 {¶ 16} Appellant testified that Starlette was the aggressor. Appellant testified that his act of striking his wife ". . . was just a reaction, I went up like with my elbow and hit her." (2T. at 261). Appellant's admitted intention in elbowing his wife in the chest was to get her off him and to make her stop hitting him. (Id. at 273). At no time did appellant testify that he had a bona fide belief that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force. In fact, appellant testified that after his wife attacked him a second time "I just got up and left." (2T. at 262-263). Appellant further testified that he was not injured by his wife's attacks. (Id. at 272).
 {¶ 17} At the conclusion of the trial, the trial court instructed the jury on the affirmative defense of self-defense in accordance with the defense's contention that Starlette was the aggressor. Appellant was found guilty of domestic violence. The jury also found that the Appellant had previously been convicted of aggravated assault against a family or household member, elevating the offense to a felony of the fourth degree. The trial court sentenced the Appellant to eighteen months in prison and three years of post-release control.
 {¶ 18} Appellant has timely appealed raising as his sole assignment of error: *Page 6 
 {¶ 19} "I. THE TRIAL COURT ERRED IN REFUSING TO ALLOW TESTIMONY REGARDING THE COMPLAINING WITNESSES' PRIOR CONVICTION FOR DOMESTIC VIOLENCE WHICH INVOLVED APPELLANT AS THE VICTIM."
 I. {¶ 20} In his sole assignment of error, appellant challenges the trial court's exercise of its discretion in excluding evidence of his wife's violent character, offered in the form of testimony concerning her prior conviction for domestic violence against appellant, in support of his claim that he had acted in self-defense.
 {¶ 21} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. State v. Martin (1985), 19 Ohio St.3d 122, 129. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 22} Self-defense is an affirmative defense and the burden of going forward with evidence on that issue, and the burden of proof by a preponderance of the evidence, is upon the accused. R .C. 2901.05(A);State v. Palmer, 80 Ohio St.3d 543, 1997-Ohio-312. The defense of self-defense may exonerate an accused's admitted use of force. To establish self-defense in the use of non-deadly force, the accused must show that "(1) he was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect *Page 7 
himself from such danger was by the use of force not likely to cause death or great bodily harm." State v. Griffin, 2d Dist. No. 20681,2005-Ohio-3698, at ¶ 18, citing 4 Ohio Jury Instructions (2006), Section 411.33 and State v. Hansen, 4th Dist. No. 01 CA15, 2002-Ohio-6135, at ¶ 24.
 {¶ 23} In the case at bar appellant contends that the trial court abused its discretion by excluding testimony concerning his wife's violent character, when this evidence was admissible to show (1) that he did not create the situation giving rise to the affray, i.e., that he was not the aggressor in their altercation, and (2) that his state of mind was such that he was acting upon a reasonable belief that he needed to use force to defend himself against his wife's use of unlawful force.
 {¶ 24} Evid. R. 404 and 405 govern the matters of when and how character evidence may be adduced in support of a claim of self-defense. Evid. R. 404 provides in part:
 {¶ 25} "(A) Character evidence generally
 {¶ 26} "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 27} " * * *
 {¶ 28} "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; * * *. *Page 8 
 {¶ 29} "(B) Other crimes, wrongs or acts.
 {¶ 30} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 31} Thus, Evid. R. 404 provides that character evidence is admissible for some limited purposes. Evid. R. 405 then sets forth two methods by which character may be proved-opinion and reputation, and specific acts evidence-and when each type is admissible. That rule provides:
 {¶ 32} "(A) Reputation or opinion
 {¶ 33} "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 34} "(B) Specific instances of conduct
 {¶ 35} "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 36} Appellant did not attempt to cross-examine his wife concerning her conviction for domestic violence against appellant. Rather, appellant wished to present evidence of specific instances of the victim's criminal history through his own testimony pursuant to Evid. R. 404(A) (2) and Evid. R. 405(B) for demonstrating that he had a valid reason for fearing his wife in order to prove his state of mind. See, e.g. State v. Salyers, *Page 9 
Montgomery App. No. 20695, 2005-Ohio-2772 at ¶ 32; State v.Wetherall, Hamilton App. No. C-000113, 2002-Ohio-1613.
 {¶ 37} However, even if the trial court erred in excluding this evidence from trial, we must review the exclusion of this evidence under the harmless error standard. Crim. R. 52(A), which governs the criminal appeal of a non-forfeited error, provides that "[a]ny error * * * which does not affect substantial rights shall be disregarded." (Emphasis added.) Thus, Crim. R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error"-i.e., a "[deviation from a legal rule." United States v. Olano (1993),507 U.S. 725, 732-733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the reviewing court must engage in a specific analysis of the trial court record-a so-called "harmless error" inquiry-to determine whether the error "affect[ed] substantial rights" of the criminal defendant. In U.S. v.Dominguez Benitez (June 14, 2004), 542 U.S. 74, 124 S.Ct. 2333,159 L.Ed.2d 157, the Court defined the prejudice prong of the plainerror analysis, "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preservederror requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309-310 (1991) (giving examples). Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U.S. 750 (1946). To affect `substantial rights,' . . . error must have `substantial and injurious effect or influence in determining the . . . verdict.'Kotteakos, supra, at 776." 124 S.Ct. at 2339. *Page 10 
[Emphasis added]. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240. See, also, State v. Fisher, 99 Ohio St.3d 127, 129,2003-Ohio-2761 at ¶ 7, 789 N.E.2d 222, 224-225. Thus, a so-called "[t]rial error" is, "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt."Fulminante, 499 U.S. at 307-308, 111 S.Ct. 1246, 113 L.Ed.2d 302.
 {¶ 38} The trial court did allow testimony regarding the appellant's knowledge of his wife's propensity for violence. The appellant was permitted to testify that during their relationship, there had been instances when his wife, Starlette Batrez, had been violent towards him. (2T. at 279). He testified that Mrs. Batrez had been convicted of a crime and was on probation at the time of the July 4, 2006 incident. (2T. at 270, 279-280). Because of that conviction, she was under a court order not to have any contact with the appellant. (2T. at 270, 279-280).
 {¶ 39} Further, Mrs. Batrez testified as follows:
 {¶ 40} "MR. WHITNEY: And was the violence always from Walter directed towards you, or was it ever vice versa?
 {¶ 41} "MRS. BATREZ: It has been vice versa.
 {¶ 42} "MR. WHITNEY: And that's been over a period of years, has it not?
 {¶ 43} "MRS. BATREZ: Yes, it has.
 {¶ 44} "MR. WHITNEY: The question was: Did you ever strike out at him?
 {¶ 45} "MRS. BATREZ: Have I ever struck out at him, yeah. *Page 11 
 {¶ 46} "MR. WHITNEY: Did there come a time that you became angry and aggravated and struck him while laying in bed?
 {¶ 47} "MRS. BATREZ: I was not angry. I was getting a little frustrated by the name-calling. I did kind of like went to go shove him, but I didn't strike him.
 {¶ 48} (1T at 172-173; 176; 180).
 {¶ 49} In the case at bar, appellant testified that his act of striking his wife " . . . was just a reaction, I went up like with my elbow and hit her." (2T. at 261). Appellant's admitted intention in elbowing his wife in the chest was to get her off him and to make her stop hitting him. (Id. at 273). At no time did appellant testify that he had a bona fide belief that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force. In fact, appellant testified that after his wife attacked him a second time "I just got up and left." (2T. at 262-263). Appellant further testified that he was not injured by his wife's attacks. (Id. at 272).
 {¶ 50} The trial judge instructed the jury on the affirmative defense of self-defense.
 {¶ 51} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267. The *Page 12 
weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 52} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill(1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App. 3d 667, 607N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 53} In the case at bar, the jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.
 {¶ 54} Accordingly, we find no manifest injustice occurred. We therefore find no reasonable possibility had the jury been permitted to hear testimony of Mrs. Batrez's misdemeanor conviction for domestic violence against her husband they would have found appellant not guilty, and hold that the error committed was harmless beyond a *Page 13 
reasonable doubt. State v. Lytle (1976), 48 Ohio St.2d 391, 403,358 N.E.2d 623, 630-631, vacated on other grounds (1978), 438 U.S. 910,98 S.Ct. 3135, 57 L.Ed.2d 1154.
 {¶ 55} Appellant's sole assignment of error is overruled.
 {¶ 56} For the foregoing reasons, the judgment of the Court of Common Pleas, of Richland County, Ohio, is affirmed.
 Gwin, P.J., Wise, J., and Delaney, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, of Richland County, Ohio, is affirmed. Costs to appellant. *Page 1