[Cite as *State v. Asp*, 2023-Ohio-290.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 22 CA 11 |
| JAMES C. ASP | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                Pleas, Case No. 20 CR 131


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         January 31, 2023


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

LINDSEY K. ANGLER                       GEORGE URBAN
PROSECUTING ATTORNEY                    116 Cleveland Avenue, NW
JASON R. FARLEY                         Suite 808
ASSISTANT PROSECUTOR                    Canton, Ohio  44702
409 Wheeling Avenue
Cambridge, Ohio  43725

*Wise, J.*

{¶1} Defendant-Appellant James C. Asp appeals his conviction and sentence on one count of Assault, entered in the Guernsey County Court of Common Pleas following a jury trial.

{¶2} Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶3} For purposes of the appeal, the relevant facts and procedural history are as follows:

{¶4} In the morning hours of June 9, 2020, Sergeant Robbie Oakley of the Guernsey County Sheriff's Department was dispatched to the residence of Appellant James Asp's mother and stepfather. (T. at 332). Appellant's wife was also there at the time. They reported to Sergeant Oakley that Appellant had been making threats and had spun gravel at them as he left the residence. (T. at 333-335).

{¶5} A second call was received by the Sheriff's Department later that evening on a report of a verbal altercation at Appellant's residence. Deputies Stoney and Terrell arrived at the residence where they were met outside by Appellant's wife. (T. at 365-370). She climbed through a window, unlocked the door, and let the deputies inside. (T. at 370). Based on the earlier incident, in conjunction with the second call, it was immediately determined that Appellant be placed under arrest. Deputy Stoney ordered Appellant to turn around, but Appellant refused to follow commands and a scuffle between the deputies and Appellant ensued. (T. at 372).

**{¶6}** Dep. Stoney testified that Appellant bit him during the altercation. (T. at 437-439) Dep. Stoney testified that he was bit in the right arm, chest and armpit area. (T. at 465). Dep. Stoney also testified that he was cut on his forearm. (T. at 439).

**{¶7}** On June 18, 2020, the Guernsey County Grand Jury returned an indictment against Appellant James Asp charging him with one count of Assault, in violation of R.C. §2903.13, a felony of the fourth degree.

**{¶8}** On June 26, 2020, a plea of not guilty was entered.

**{¶9}** On October 29, 2020, the trial court ordered that Appellant be evaluated to determine his competency to stand trial.

**{¶10}** On December 17, 2020, after the parties stipulated to the report on competency of Dr. Adkins, the trial court found Appellant was not competent to stand trial, but could be restorable within the time allowed by law.

**{¶11}** On April 30, 2021, the trial court entered a finding that, pursuant to Dr. Scott, Appellant was restored to competency and the matter would proceed to trial.

**{¶12}** On June 21, 2021, Appellant's trial counsel filed a Motion to Suppress, which was opposed by Motion filed by the State on June 22, 2021.

**{¶13}** On July 6, 2022, the trial court denied Appellant's Motion to Suppress. Shortly thereafter, counsel for Appellant withdrew, and Appellant proceeded to engage in self-representation with standby counsel.

**{¶14}** On March 15, 2022, a jury trial commenced in this matter.

**{¶15}** At trial, the jury heard testimony on behalf of the state of Ohio from Ashley Harper, Major Jeremy Wilkinson, Sgt. Robbie Oakley, Deputy Matt Terrell and Deputy Chancellor Stoney.

{¶16} Ashley Harper, a licensed social worker and crisis screener employed by Allwell Behavioral Services and Genesis Healthcare, testified that she performed a crisis screen of Appellant when he was at the jail. She recalled that Appellant was edgy and anxious and "seemed angry and kind of mad at the world." (T. at 218). She testified that Appellant told her that he was in jail "because of a domestic violence, but that the cops entered his home without a warrant." (T. at 219). He told her that he "fought them and was biting at them." *Id.*

{¶17} Major Jeremy Wilkinson testified that he responded to the domestic violence call at Appellant's house after hearing it come over the radio because he had known Appellant for over 40 years and thought he could talk to him. (T. at 286). He stated that no one was at the residence when he arrived. (T. at 287-288).

{¶18} He further explained to the jury that a warrant is not required to arrest an individual when active charges exist, which in this case were domestic violence charges. (T. at 288, 296). The officers only need to have probable cause. (T. at 296). He explained that in domestic violence cases such as these, where the both the victim and suspect are in the home,

> you want to bring the suspect under control as quickly as you can. If they start backing up from you, many case studies show they may be backing up to get a weapon because it is their house, they know where everything is in that house.
>
> You're just coming in, you don't know if there's a shotgun behind the door if there's a knife on the counter, so you want to subdue them and bring them under control as quickly as you can." (T. at 294).

{¶19} Major Wilkinson also testified that he reviewed the body-camera footage from both Deputy Terrell and Deputy Stoney and that it was his opinion that "there was no violation of the use of force during the course of that arrest." (T. at 291). He stated that his only critique of the situation was that he "would have used my taser a lot sooner" because Appellant had his hands raised in an offensive position. (T. at 294-295).

{¶20} Deputy Robbie Oakley testified that he responded to the domestic disturbance call at the home of Appellant's parents on June 9, 2020. (T. at 330-332). After speaking with Appellant's parents and his wife, who was also present, he determined there was probable cause for a charge of domestic violence against Appellant based on their statements concerning Appellant's erratic behavior and spinning his tires and throwing gravel at them when he left. (T. at 332, 334). He stated that it was not reported that any physical violence had occurred but that the charge was based on the report of threats. (T. at 335-336). He testified that he notified all officers on duty, as well as other agencies, that there were active charges against Appellant. (T. at 336).

{¶21} Deputy Matt Terrell testified that he was dispatched to Appellant's home at approximately 9:00 pm on June 9, 2020, for a call regarding a male yelling at a woman. (T. at 366). He stated that at that time he was already aware of the domestic violence charges out for Appellant. *Id.* He recalled that he and Deputy Stoner both responded to the call and arrived at the scene in separate police cruisers. (T. at 367). He testified that Appellant's wife met them outside and that she climbed in through a window and then unlocked a door and let the deputies in to the house. (T. at 369-370). He stated that Deputy Stoney entered first and advised him that "he was going to be hands on", meaning "he'll take him into custody, hands on." (T. at 371). He further explained that Deputy

Stoney was telling him that he would be the one to arrest Appellant. *Id.* He explained that when Dep. Stoney entered the living room and approached Appellant to take him into custody, a fight ensued. (T. at 371-372). Deputy Terrell testified that he advised Appellant that he had warrants for his arrest and that Deputy Stoney advised him multiple times to put his hands behind his back, but that Appellant failed to comply. (T. at 372-376). He testified that as Appellant was backing away from Dep. Stoney and into the kitchen from the living room, "[h]ands start flailing, and Deputy Stoney gets backed up in to the counter space and starts yelling he's biting me, he's fucking biting me." (T. at 376). He stated that he also saw Appellant's "face in Deputy Stoney's chest, shoulder, bicep area". (T. at 376-377). Dep. Terrell then grabbed Appellant to try to lift him off of Dep. Stoney, but was unsuccessful and ended up on the ground with the two men. (T. at 377). Appellant continued to resist and Dep. Terrell advised Dep. Stoney "to get your taser out and tase him." *Id.* Deputy Stoney then used his taser on Appellant's back, and the deputies were able to get his hands behind his back and cuff him. (T. at 378). Deputy Terrell then asked Deputy Stoney if he was okay and Dep. Stoney responded that "he bit the fuck out of my chest." (T. at 379). Appellant continued to cuss at the deputies and attempted to kick them. (T. at 379-380). Dep. Terrell explained that he was able to stop Appellant from kicking them by taking one leg, crossing it into the pit and folding the other one over, thereby immobilizing the legs. (T. at 381). He recalled that Appellant sustained a cut above his left eye when he hit it on the table when they went to the ground. (T. at 382).

{¶22} Deputy Chancellor Stoney testified to the events which took place on June 9, 2020. He stated that he was wearing a short-sleeved shirt and a tactical vest, (T. at 432). He recalled that he told Dep. Terrell that he was going "hands on" meaning that he

was going to be the one to put his hands on Appellant and take him into custody. (T. at 436). He testified that when he entered the residence, he encountered Appellant in the kitchen area and ordered him to turn around and put his hands behind his back, but that he did not comply and continued to back away. *Id.* Then when Dep. Stoney went to obtain Appellant's wrists and put his hands behind his back, a struggle ensued. *Id.* He recalled that Appellant had his face in the deputy's right chest/armpit area and that Appellant bit him. (T. at 437). The men then fell to the ground as Dep. Stoney "struggled to get compliance" of Appellant. *Id.* He next deployed his taser and was able to gain control of Appellant's wrists and place him in handcuffs. Id. He testified that when he was on the ground with Appellant, Appellant continued to kick his feet at him. *Id.* Dep. Stoney then identified photographs depicting his injuries, including a cut he received to his forearm, a gash on his arm, and the area where he was bitten. (T. at 438-441). He testified that the bite from Appellant was painful, in the range of 8 on a 10-point scale. (T. at 441-442).

{¶23} On cross-examination, Deputy Stoney was asked to explain to the jury what he meant in his written report when he stated that he "delivered closed hand strikes." (T. at 468). Dep. Stoney explained that "[a] closed hand strike is essentially a punch." *Id.*

{¶24} The body cameras of Deputy Stoney and Deputy Terrell were played for the jury and introduced into evidence.

{¶25} Appellant did not testify on his own behalf nor, did he call any witnesses.

{¶26} On March 17, 2022, the jury returned a guilty verdict on the sole charge of assault on a peace officer.

{¶27} On March 17, 2022, a sentencing hearing was held wherein the trial court sentenced Appellant to ten (10) months, local incarceration.

**{¶28}** On March 29, 2022, the trial court entered the Jury Verdict and Sentencing Entry on the docket.

**{¶29}** Appellant now appeals, raising the following assignments of error on appeal:

## ASSIGNMENTS OF ERROR

**{¶30}** "I. WHETHER THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR THE INDICTED CHARGE BEYOND A REASONABLE DOUBT AND IF THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, VIOLATING APPELLANT'S GUARANTEES OF DUE PROCESS.

**{¶31}** II. WHETHER THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROPERLY INSTRUCT THE JURY ON SELF-DEFENSE."

## I.

**{¶32}** In his first assignment of error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶33}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶34} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶35} Appellant herein was charged and convicted of Assault, in violation of R.C. §2903.13, which provides, "[no] person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶36} R.C. §2901.01(A)(3) provides, " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶37} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. §2901.22(B).

{¶38} Generally, assault is a misdemeanor of the first degree. R.C. §2903.13(C)(1). Pursuant to R.C. §2903.13(C)(5), where the victim of the offense is a peace officer engaged in the performance of his official duties, the crime is elevated to a felony of the fourth degree.

{¶39} Appellant herein argues that the evidence is insufficient to prove beyond a reasonable doubt that he "knowingly" caused "physical harm" to Deputy Stoney.

**{¶40}** The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634 (1995); *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722 (5th Dist. 1969). Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412 (10th Dist. 1995).

**{¶41}** Here, the evidence was sufficient to support all of the necessary elements of assault, pursuant to R.C. §2919.25(A). Appellant knowingly fought with and bit Deputy Stoney more than once. Appellant is presumed to understand the reasonable and probable consequences of his actions. It is reasonable and probable to assume that when someone bites another person, the aggressor knows that the victim will suffer some harm. *State v. Lack,* 1st Dist. Hamilton No. C-200334, 2021-Ohio-2956, ¶21-22. Deputy Stoney testified that at the time of Appellant's actions, the bite caused him pain. (T. at 441-442). On the body cam footage played for the jury and introduced into evidence, Deputy Stoney immediately acknowledges that he has been bitten.

**{¶42}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant knowingly caused or attempted to cause physical harm to a peace officer.

**{¶43}** We hold, therefore, that the state met its burden of production regarding the elements of assault of a peace officer; accordingly, there was sufficient evidence to support Appellant's conviction for assault involving Deputy Stoney.

**{¶44}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997).

**{¶45}** Here, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

**{¶46}** The jury heard the testimony from Major Wilkinson, Deputy Stoney, Deputy Terrell and Deputy Oakley, who were all subjected to cross-examination. The jury also saw the deputies' body camera videos.

**{¶47}** We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury

appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Appellant of the offense.

**{¶48}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Appellant was convicted.

**{¶49}** Accordingly, we find Appellant's conviction was not against the manifest weight or sufficiency of the evidence.

**{¶50}** Appellant's first assignment of error is overruled

## II.

**{¶51}** In his second assignment of error, Appellant argues that the trial court erred in not providing the proper jury instruction on self-defense. We disagree.

**{¶52}** Appellant claims that the trial court applied the wrong legal standard and incorrectly failed to shift the burden to the State to disprove self-defense.

**{¶53}** Here, Appellant's crime was committed on June 9, 2020, and his trial commenced on March 15, 2022. H.B. 228, which amended the provisions in R.C. §2901.05, that define self-defense was effective on March 28, 2019. Thus, it was effective both before the alleged offense occurred in this case and the trial in this matter. The trial court, however, gave an instruction to the jury based on the law in effect prior to the amendment.

**{¶54}** At the time the briefs in this case were filed, the issues of the proper procedure for burden-shifting and the appropriate standard for Appellate review of a self-

defense claim were before the Ohio Supreme Court in a case that has now been released as *State v. Messenger,* Slip Opinion No. 2022-Ohio-4562.

**{¶55}** To support a claim of self-defense involving the use of non-deadly force, a defendant must show that "(1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm." *State v. Paskins*, —— N.E.3d ——, 2022-Ohio-4024, ¶ 48 (5th Dist.). Self-defense is an affirmative defense - not an element of a crime. *Messenger* at ¶ 24. "[A] determination as to whether the trial court applied the correct legal standard in reviewing and weighing the evidence presents a question of law requiring de novo review." *Dublin v. Starr*, 10th Dist. Franklin No. 21AP-173, 2022-Ohio-2298, ¶ 50.

**{¶56}** In *Messenger*, the Ohio Supreme Court clarified the burden of proof where a defendant asserts a claim of self-defense under the version of the statute that became effective March 28, 2019. It recognized that "R.C. 2901.05(B)(1) triggers the state's duty to disprove self-defense so long as 'there is evidence presented that tends to support that the accused person used the force in self-defense' " - a burden that is not all that heavy. *Id.* at ¶ 20, 22 ("The reference in R.C. 2901.05(B)(1) to 'evidence presented that tends to support' self-defense indicates that the defendant's burden of production is not a heavy one and that it might even be satisfied through the state's own evidence."). As such, "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id.* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence

would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden," and the state must then disprove self-defense. *Id.* at ¶ 25. In that case, "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Id.* at ¶ 26.

**{¶57}** However, in *State v. Brooks*, the Ohio Supreme Court advised that in that case, even though the former version of R.C. §2901.05 was incorrectly applied at trial, "if, as the state has argued, Brooks was not entitled to a self-defense claim, then the error that is the subject of the certified question would be harmless". *State v. Brooks*, __ Ohio St.3d __, 2022-Ohio-2478

**{¶58}** Upon review of the record before us, we find that Appellant herein was not entitled to a self-defense instruction. Here, Appellant did not take the stand to assert self-defense or provide any evidence of self-defense at trial. While a defendant does not need to testify to be entitled to a self-defense instruction, there must be evidence, however, to support the instruction. *State v. McDade,* 113 Ohio App. 397, 404 (1959) ("The evidence of self-defense may come wholly from the state....").

**{¶59}** The only statements by Appellant were made during closing arguments, which does not constitute evidence. It is well established that closing arguments are not evidence and that statements made during opening statements and closing arguments are not evidence. *See State v. Frazier*, 73 Ohio St.3d 323, 338, 652 N.E.2d 1000 (1995); *Nagel v. Nagel*, 9th Dist. Lorain No. 09CA009704, 2010-Ohio-3942, ¶ 16; *Ernsberger v.*

*Ernsberger*, 8th Dist. Cuyahoga No. 100675, 2014-Ohio-4470, ¶ 35. The court instructed the jury to that effect. (T. at 588).

**{¶60}** Appellant did not present any testimony as to why he was not at fault in creating the situation, why he reasonably believed he needed to use force to defend himself, or that the force used was reasonable. We therefore conclude that Appellant did not meet his initial burden, and the trial court should have refused to instruct the jury on self-defense.

**{¶61}** Further, as it pertains to law enforcement officers, under well-settled Ohio law, " '[i]n the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, *whether or not the arrest is illegal under the circumstances.*' " (Emphasis added.) *State v. Mann*, 19 Ohio St.3d 34, 39, 482 N.E.2d 592 (1985), *quoting Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus. Even if Appellant's arrest had been unlawful, whether it was or was not is immaterial to the assault charge. Unless an arresting officer uses excessive or unnecessary force, a private citizen may not use force to resist arrest by an authorized police officer, regardless of whether the arrest is illegal. *State v. Whetstone*, 11th Dist. Lake No. 2015-L-114, 2016-Ohio-6989, ¶ 23, citing *Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus. "Consequently, if the arrest was unlawful and a citizen forcibly resisted arrest, the citizen may not be subject to prosecution for resisting arrest, but would be subject to prosecution for assault on a peace officer." *Id*

**{¶62}**  Accordingly, we hold any error committed as it pertained to the instruction on self-defense was harmless beyond a reasonable doubt. *See State v. Batrez,* 5th Dist. Richland No. 2007–CA–75, 2008-Ohio-3117, 2008 WL 2587610; *State v. Galloway*, 5th Dist. No. 15 CAC 11 0089, 2016-Ohio-7767, 74 N.E.3d 754, ¶ 27.

**{¶63}**  Appellant's second assignment of error is overruled.

**{¶64}**  The judgment of the Court of Common Pleas, Guernsey County, Ohio, is affirmed.


By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 0126