[Cite as *State v. Wilson*, 2025-Ohio-3038.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. CT2025-0011 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2024-0672 |
| JEREMIAH WILSON | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry: August 25, 2025 |

**BEFORE:** Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Appellate Judges

**APPEARANCES:** JOSEPH A. PALMER, Assistant Prosecuting Attorney for Muskingum County, Ohio, for Plaintiff-Appellee; CHRISTOPHER BAZELEY, for Defendant-Appellant.

OPINION

*Baldwin, P.J.*

## STATEMENT OF FACTS AND CASE

{¶1}   The appellant lived with his elderly mother, victim D.W., who told the appellant that he could stay with her on the condition that no drugs were permitted in her home. In addition, D.W. allowed the appellant to use one of her two cellular telephones.

{¶2}   On or about October 4, 2024, D.W. overheard the appellant talking on D.W.'s cell phone and arranging a meeting with someone in an alley. D.W., who had observed drug paraphernalia in the appellant's bedroom, demanded the appellant return her cell phone, and reiterated her condition that no drugs were permitted in her home.

The appellant became angry and began yelling at D.W. D.W. tried to grab for her phone, and the argument escalated. The appellant went into his bedroom and slammed the door. When D.W. opened the door and said, "no slamming the door," the appellant got up from his bed and came at D.W. D.W. became afraid for her physical safety and threw a spoon rest in the appellant's direction, which landed on his bed. When it appeared that the appellant was going to slam the door again, D.W. grabbed a chair, and it hit the door. The appellant exited his bedroom and grabbed D.W., slammed her against the stove, and started choking her. D.W. told the appellant to get off her, and he released her. However, he came back at D.W. and hit her again. As the appellant moved towards the kitchen table, D.W. tried once more to grab her phone. The appellant hit D.W. "into the microwave stand", causing D.W. to land on the tile floor on her elbow and arm, resulting in injury. The appellant fled with D.W.'s phone as she screamed for someone to "call the law."

{¶3} On October 9, 2024, the appellant was indicted on the following charges:

- Count One, Disrupting Public Services in violation of R.C. 2909.04(A)(1), a felony of the fourth degree;

- Count Two, Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, with a Repeat Violent Offender specification pursuant to R.C. 2941.149(A);

- Count Three, Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree, with a Repeat Violent Offender specification pursuant to R.C. 2941.149(A);

- Count Four, Robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree, with a Repeat Violent Offender specification pursuant to R.C. 2941.149(A);

- Count Five, Strangulation in violation of R.C. 2903.18(B)(1), a felony of the second degree, with a Repeat Violent Offender specification pursuant to R.C. 2941.149(A);

- Count Six, Strangulation in violation of R.C. 2903.18(B)(2), a felony of the third degree; and,

- Count Seven, Domestic Violence in violation of R.C. 2919.25, a felony of the third degree.

The appellant pleaded not guilty and was appointed counsel.

{¶4} The matter went to trial on December 17, 2024. The appellee presented the testimony of the patrolman who responded to the call; the detective who investigated the matter; the neighbor who heard the encounter and called 911; and, victim D.W. The jury returned with a verdict of not guilty on the strangulation charges, and a verdict of guilty on all remaining charges. The trial court ordered a presentence investigation, and ordered both parties to submit sentencing memoranda.

{¶5} A sentencing hearing was held on January 29, 2025. The parties argued their respective positions on sentencing, and the appellee noted that the appellant's Robbery and Aggravated Robbery convictions should merge for purposes of sentencing. The trial court confirmed that the appellee wished to merge Counts Three and Four for the purposes of sentencing, and further confirmed that the appellant had no objection to said merger. Neither party brought up the merger of Count Two - Felonious Assault and

Count Seven - Domestic Violence for purposes of sentencing. The appellant was sentenced as follows: on Count One, Disrupting Public Services, a stated prison term of seventeen (17) months; on Count Two, Felonious Assault, a mandatory prison term of six (6) years; on Count Three, Aggravated Robbery, a minimum mandatory prison term of seven (7) years, and an indefinite prison term of ten and one half (10 ½) years; and, on Count Seven, Domestic Violence, a stated prison term of thirty (30) months. The trial court ordered further that the sentences be served concurrently, resulting in the imposition of an aggregate indefinite sentence of seven (7) to ten and one half (10 ½) years.

{¶6} The appellant filed a timely appeal, and sets forth the following two assignments of error:

{¶7} "I. WILSON'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ASSERT A SELF-DEFENSE DEFENSE WHEN ONE WAS JUSTIFIED BY THE RECORD."

{¶8} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE WILSON'S CONVICTIONS FOR FELONIOUS ASSAULT AND DOMESTIC VIOLENCE FOR SENTENCING."

{¶9} For the reasons set forth below, we overrule the appellant's assignments of error and affirm the decision of the trial court.

### ASSIGNMENT OF ERROR NO. I

{¶10} The appellant argues in his first assignment of error that his trial counsel was ineffective. We disagree.

## *Standard Of Review*

**{¶11}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984), and was discussed by this court in *Mansfield v. Studer,* 2012-Ohio-4840 (5th Dist.):

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838 (1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct.

at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether

counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

*Studer* at ¶¶ 58-61. Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must establish two prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and second, that the appellant was prejudiced by the alleged ineffectiveness.

### *Analysis*

{¶12} The appellant engaged in a violent confrontation with his elderly mother over his continued possession of her cell phone and his use of drugs in her home. On appeal, he argues that his trial counsel was ineffective because he failed "to assert a self-defense defense when one was justified by the record." We disagree.

{¶13} The elements of self-defense were discussed by the Ohio Supreme Court in the case of *State v. Messenger*, 2022-Ohio-4562:

A self-defense claim includes the following elements:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of

such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*Id.* at ¶14, quoting *State v. Barnes*, 2002-Ohio-68, 94 Ohio St.3d 21, 24. Self-defense was discussed by this Court in *State v. Asp*, 2023-Ohio-290 (5th Dist.). Although the *Asp* case addressed the issue of self-defense in the context of jury instructions, it is nonetheless instructive:

Upon review of the record before us, we find that Appellant herein was not entitled to a self-defense instruction. Here, Appellant did not take the stand to assert self-defense or provide any evidence of self-defense at trial. While a defendant does not need to testify to be entitled to a self-defense instruction, there must be evidence, however, to support the instruction. *State v. McDade,* 113 Ohio App. 397, 404, 178 N.E.2d 824 (1959) ("The evidence of self-defense may come wholly from the state....").

The only statements by Appellant were made during closing arguments, which does not constitute evidence. It is well established that closing arguments are not evidence and that statements made during opening statements and closing arguments are not evidence. *See State v. Frazier*, 73 Ohio St.3d 323, 338, 652 N.E.2d 1000 (1995); *Nagel v. Nagel*, 9th Dist. Lorain No. 09CA009704, 2010-Ohio-3942, 2010 WL 3294299, ¶ 16; *Ernsberger v. Ernsberger*, 8th Dist. Cuyahoga No. 100675, 2014-Ohio-4470, 2014 WL 5088970, ¶ 35. The court instructed the jury to that effect. (T. at 588).

Appellant did not present any testimony as to why he was not at fault in creating the situation, why he reasonably believed he needed to use force to defend himself, or that the force used was reasonable. We therefore conclude that Appellant did not meet his initial burden, and the trial court should have refused to instruct the jury on self-defense.

*Id.* at ¶¶ 58-60.

{¶14} In the case sub judice, the appellant had the opportunity to cross examine the appellee's witnesses in an effort to establish that he was not at fault in creating the situation "giving rise to the affray," despite the fact that the "affray" appears to have been instigated by his use of drugs in D.W.'s home in direct contradiction of her conditions, and his refusal to return her cell phone upon request; that he believed he was in imminent danger of bodily harm; and, that he could not avoid the danger. Further, while not required to take the stand to prove these elements, the appellant could have done so. However, doing so would have opened him up to cross-examination and allowed the jury to hear evidence of his criminal history. Trial counsel's decision to not pursue the defense of self-defense under these facts does not fall below an objective standard of reasonableness. These are strategic assessments, and cannot provide the basis for reversal, particularly without a showing of prejudice. As set forth in *Strickland,* supra*,* "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693.

{¶15} The appellant cannot overcome the first prong of the *Strickland* test, let alone show prejudice. As such, we find his first assignment of error to be without merit.

## ASSIGNMENT OF ERROR NO. II

{¶16}  The appellant argues in his second assignment of error that the trial court erred in failing to merge the Felonious Assault and Domestic Violence charges for purposes of sentencing. We disagree.

### Standard Of Review

{¶17}  The appellant submits that the issue of merger of the Felonious Assault and Domestic Violence charges was preserved for appellate review because the trial court considered the merger of his Robbery and Aggravated Robbery convictions for purposes of sentencing. We disagree. The appellant did not preserve for appeal the court's failure to merge the Felonious Assault and Domestic Violence charges for purposes of sentencing, particularly in light of the fact that the issue of merger was discussed during the sentencing hearing, and merger of the Felonious Assault and Domestic Violence charges was not raised by either party.  As stated by the Ohio Supreme Court in *State v. Rogers*, 2015-Ohio-2459:

> . . . "It is a well-established rule that ' "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." ' " *Id*. at ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Thus, by failing to seek the merger of his convictions as allied offenses of similar import in the trial court, Rogers forfeited his allied offenses claim for appellate review. *Id*.

*Id*. at ¶21. We therefore review the appellant's second assignment of error for plain error.

### *Analysis*

**{¶18}** The *Rogers* Court addressed the issue of plain error in the context of merger, and stated:

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden of proof to demonstrate plain error on the record, *Quarterman* at ¶ 16, and must show "an error, *i.e.,* a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). However, even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* The accused is therefore required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims. *United States v. Dominguez Benitez,* 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B), and also noting that the burden of proving entitlement to relief for plain error "should not be too easy").
>
> But even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not

required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Id.* at ¶¶ 22-23.

**{¶19}** We find that the appellant has failed to satisfy his burden of demonstrating that the trial court engaged in a deviation from a legal rule that constitutes an obvious defect in the trial proceedings. Therefore, he has failed to establish plain error, and his second assignment of error is without merit.

**{¶20}** R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The application of R.C. 2941.25, and whether merger is required for purposes of sentencing, requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 2016-Ohio-880, ¶ 22 (5th Dist.). The *Hughes* Court went on to state:

> . . . In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. *Id.* at ¶ 48. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.
>
> *Johnson's* rationale has recently been described by the Court as "incomplete." *State v. Earley,* 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Court has recently spoken again on merger issues and instructs us to ask three questions when a defendant's conduct supports multiple offenses: (1) were the offenses dissimilar in import or significance? (2) were they committed separately? and (3) were they committed with separate animus

or motivation? *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. An affirmative answer to any of the above will permit separate convictions. *Id.* The conduct, the animus, and the import must all be considered. *Id.*

*Id.* at ¶22-23.

**{¶21}** The appellant was convicted of Felonious Assault in violation of R.C. 2903.11(A)(1), and Domestic Violence in violation of R.C. 2919.25(A). R.C. 2903.11(A)(1) defines Felonious Assault as knowingly causing serious physical harm to another. R.C. 2919.25(A) defines Domestic Violence as knowingly causing or attempting to cause physical harm to a family or household member.

**{¶22}** Felonious Assault requires causing <u>serious physical</u> harm to another, while Domestic Violence requires causing <u>physical harm to a family member</u>. There is no dispute that the appellant and D.W. were family members. In addition, evidence was presented during trial that the altercation between the appellant and D.W. consisted of more than one physical encounter. Initially, the appellant got up from his bed and came at D.W., and D.W. became afraid for her physical safety. The appellant exited his bedroom and grabbed D.W., slammed her against the stove, and started choking her. D.W. told the appellant to get off her, and he released her. After releasing D.W. and stepping back, the appellant moved towards the kitchen table and hit D.W. "into the microwave stand," causing her to land on the tile floor on her elbow and arm, resulting in injury. Even the appellant acknowledges this break in the altercation in his Brief: "The record shows that there was one assault, ***albeit with a break in between***." (Emphasis added.)

**{¶23}** The distinction between the Felonious Assault charge and the Domestic Violence charge was addressed by the appellee both during the presentation of evidence, and in closing arguments as follows:

And so, you can base your felonious assault conviction - - there are alternatives in the manner in which you can find somebody guilty of felonious assault, so the Judge will read to you several of those manners.

So, for example, in addition to having this protracted injury on her wrist, the swelling, the acute pain, for which she went to get medical treatment that day, she also subsequently has follow-up appointments with the orthopedic surgeon. And she described potentially surgery being necessary if her wrist doesn't, I guess, fix itself or heal properly.

Also, she reported - - and use your own memories - - going in and out of it as being unconscious. Now, again, there's nobody there. The only person that was there is [D.W.]. So you have to rely on her memory of her testimony about what happened to determine whether or not that serious physical harm has been established.

But domestic violence does not require serious physical harm. It just requires any physical harm or threat. So, felonious assault would involve the finding of some serious physical harm. And that could be her unconsciousness. That could be her inarticulable pain that continues to linger on. That could be her broken bone, as she reported it, or her ongoing, unresolved wrist issues, as you witnessed here in court with her wearing a splint and protracted injury not yet healed.

{¶24} Although not evidence, the appellee's closing arguments clarified the distinction between the serious physical harm required for Felonious Assault, and the physical harm required for Domestic Violence. The jury was then able to apply the definitions of those terms provided in the trial court's jury instructions to the evidence presented during trial.

{¶25} The trial court's instructions to the jury included an instruction on Felonious Assault that defined serious physical harm as "A, any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; B, any physical harm that carries a substantial risk of death; C, any physical harm that involves some permanent capacity, whether partial or total, or that involves some temporary substantial incapacity; D, any physical harm that involves some permanent disfigurement or that involves some temporary serious disfigurement; E, any physical harm that involves acute pain of such duration as to result in the substantial suffering or that involves any degree of prolonged or intractable pain."

{¶26} The trial court also gave an instruction on Domestic Violence, stating that "[b]efore you can find the [appellant] guilty [of Domestic Violence] you must find beyond a reasonable doubt that on or about the 4th day of October 2024, and in Muskingum County, Ohio, [the appellant] knowingly caused or attempted to cause physical harm to [D.W.], a family or household member, in violation of Ohio Revised Code, Title 29, Section 2919.25(A), and against the peace and dignity of the State of Ohio." The court noted that it had previously defined physical harm, having previously defined physical harm as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶27} It was possible, and reasonable, for the jury to find that the appellant's actions of getting up from his bed and coming at the victim, causing her to be afraid for her physical safety, exiting his bedroom and grabbing the victim, slamming her against the stove and choking her, releasing her and stepping away, but then coming at her again, hitting her and knocking her "into the microwave stand", causing her to fall to the tile floor where she landed on her elbow and arm, resulted in both the serious physical harm required for Felonious Assault, and the physical harm required for Domestic Violence.

{¶28} In addition, because the trial court ordered that the sentences on each count be served concurrently, any purported failure to merge Felonious Assault and Domestic Violence for sentencing purposes did not result in a longer prison term, and as such did not result in a manifest miscarriage of justice.

{¶29} We therefore find no plain error in the trial court's failure to merge the offenses of Felonious Assault and Domestic Violence, and the appellant's second assignment of error is without merit.

## CONCLUSION

**{¶30}** Based upon the foregoing, we overrule the appellant's assignments of error numbers one and two, and affirm the judgment of the Muskingum County Court of Common Pleas.

**{¶31}** Costs to Appellant.

By: Baldwin, P.J.

Popham, J. and

Gormley, J. concur.